IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MATTIE JACKSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   2:06-CV-00477-TFM |
| | ) |
| CITY OF UNION SPRINGS, CITY OF | ) |
| UNION SPRINGS POLICE DEPARTMENT, | ) |
| CHIEF CLARENCE WHEELER, | ) |
| | ) |
|     Defendants. | ) |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on August 27, 2007, wherein the following proceedings were held and actions taken:

1. **PARTIES AND TRIAL COUNSEL:**

   COUNSEL APPEARING AT TRIAL:

   For Plaintiff:    Juraldine Battle-Hodge
   For Defendant:  Rick Howard and April McKay

   COUNSEL APPEARING AT PRETRIAL HEARING:

   For Plaintiff:    Juraldine Battle-Hodge
   For Defendant:  Rick Howard and April McKay

2. **JURISDICTION AND VENUE:**

   Jurisdiction is proper under 24 U.S.C. § 1981, 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e.

Venue is proper in the United States District Court for the Middle District of Alabama under 28 U.S.C. §§ 1332, 1391(b), as the events giving rise to the claims occurred in this district and Defendant resides in the Middle District of Alabama.

All issues to be tried by consent of all parties (Docs. 10-11, filed June 28, 2006) and 28 U.S.C. § 636(c).

**3.    PLEADINGS:**

    (1)    Complaint (Doc. 1)
    (2)    Answer (Doc. 4)
    (3)    Amended Complaint (Doc. 14)
    (4)    Answer to Amended Complaint (Doc. 12)

**4.    CONTENTIONS OF THE PARTIES:**

**Plaintiff's Contentions**:

The Plaintiff (Mattie Jackson) is a thirty-three (33) year old African-American female. Mattie Jackson filed a complaint in the United States District Court alleging Hostile Work Environment Sexual Harassment and Sex Discrimination.

On or about September 2005, Mattie Jackson was hired as a candidate for police officer by the Union Springs Police Department. During the second week of her employment, Mattie Jackson began having problems with police officers sexually harassing her.

On September 30, 2005, Mattie Jackson had to work a football game with three other black female police officers. At the end of the game, Lt. Boyd approached Mrs. Jackson and requested that she work traffic with two male officers. Lt. Boyd drove Mrs. Jackson around

from the front to the back of the main gate. Mrs. Jackson exited the car and walked up to Sgt. Kenneth Johnson and Officer Marvin Christian. At that time, Sgt. Johnson verbally assaulted Mrs. Jackson.

Later that same night, Sgt. Johnson, Officer Christian and Mrs. Jackson responded to an accident call. Ms. Jackson was made to ride in the back seat. The backseat of the police car does not open from the inside. When they arrived on the scene, Officer Christian exited the car and approached Ms. Jackson. Sgt. Johnson exited the driver's side of the car and came around to Ms. Jackson's window. Mrs. Jackson began to bang on the door for Sgt. Johnson to open it. Sgt. Johnson initially refused to open the door. After finally opening the door, Sgt. Johnson blocked Mrs. Jackson from exiting the door and intentionally touched Ms. Jackson's breast. Sgt. Johnson commented, "Oops, you are so soft." Sgt. Johnson then walked away.

A short while after the incident, Sgt. Johnson questioned Mrs. Jackson about her private (sexual) life with her husband. Mrs. Jackson told Sgt. Johnson that she did not wish to participate in that type of conversation. After Ms. Jackson refused to engage in this conversation and after Mrs. Jackson's disapproval of Sgt. Johnson touching her breast, Sgt. Johnson began making things difficult for Mrs. Jackson at work.

Additionally, Marvin Christian repeatedly approached Mrs. Jackson about "getting with her." Officer Christian made unwanted sexual advances toward Mrs. Jackson. Officer Christian's actions clearly indicated that he wanted to have a sexual relationship with Mrs. Jackson. Mrs. Jackson made it known to Officer Christian that she was uncomfortable with

his advances and communicated to him that she had no interest in a sexual relationship with him. When Mrs. Jackson turned down Officer Christian's advances, Officer Christian began retaliating against Mrs. Jackson. Officer Christian began accusing Mrs. Jackson of being rude and disrespectful in her position as police officer. Officer Christian constantly belittled Mrs. Jackson in front of other officers.

Officer Christian also started gossiping and spreading false rumors about Mrs. Jackson to other officers. Shortly after the retaliating and harassment began, no other male officer would ride with Mrs. Jackson. As a form of retaliation and harassment, Mrs. Jackson began to be constantly criticized for the work she did for the City.

Mrs. Jackson complained to Lt. Boyd early October 2005, about the sexual harassment, inappropriate touching and unfair treatment she was receiving from Sgt. Johnson and Officer Christian. Mrs. Jackson complained to Sgt. Turner a few days later. Mrs. Jackson complained to Chief Wheeler on the same day she complained to Sgt. Turner. Chief Wheeler's comment to Mrs. Jackson was sarcastic. Chief Wheeler commented, "What do you want me to do about it?" Even though Mrs. Jackson requested that the Chief take steps to rectify the matter, the Chief did not take any action. The Chief's non-action signaled to Mrs. Jackson's harassers that their conduct was acceptable. Instead of taking action to resolve the matter, the Chief treated Mrs. Jackson like she was a problem for him. Mrs. Jackson ultimately told Mayor Earl Hinson about the sexual harassment, inappropriate touching and unfair treatment she was receiving from Sgt. Johnson and Officer Christian. Likewise, the mayor failed to take any steps to rectify the problem. Instead of taking any

steps to remedy the sexual harassment that Mrs. Jackson was subjected to, Plaintiff was reprimanded and disciplined for things that other officers were not disciplined for.

Mrs. Jackson was subjected to sex discrimination by Chief Wheeler. For example, Mrs. Jackson was not issued a weapon as other new male officers were. Plaintiff was never issued a weapon or a car. Mrs. Jackson did not have a gun to protect herself or the citizens she was sworn to protect. It was common practice for the City to issue weapons regardless of whether the employee was certified. For example, before Tyrone Williams went to the academy he was issued a gun and was patrolling by himself the first day he started back to work. Since Mrs. Jackson had already worked in Tuskegee doing the exact same job, Mrs. Jackson wondered why she was not issued a weapon. Mrs. Jackson believes that because she began experiencing unwanted sexual harassment approximately two weeks into her tenure; this was a way of retaliating against her.

The City claims that it terminated Mrs. Jackson because she falsified her job application. However, Mrs. Jackson only completed a portion of the application herself. Mrs. Jackson did not complete the sections of the application concerning her criminal history and traffic violations at the request of the police department secretary, Kimberly Parham. While attempting to complete the application, Mrs. Jackson informed Ms. Parham that she had been arrested in 1996, but had been acquitted. Mrs. Jackson further informed the secretary that she had paperwork representing the same. Mrs. Jackson asked the secretary how she should complete this section of the application. Before Mrs. Jackson could complete her application, the secretary instructed Mrs. Jackson to turn in her application and

that she (secretary) would complete the criminal history section of the application. Mrs. Jackson trusted the City to complete the application as it had indicated.

Soon after Mrs. Jackson's application was submitted, the application was returned to the City by APOSTC, because it was not complete. Mrs. Jackson was not informed that the application was returned. Further, Mrs. Jackson was not given the opportunity to complete the application even though the City was aware that it had instructed Mrs. Jackson to turn in the application incomplete and it had promised Mrs. Jackson that it would finish completing the application.

APOSTC rejected Mrs. Jackson's application on the basis that Mrs. Jackson falsified or failed to report the 1996 charge. Based on the nondisclosure of the charge, Mrs. Jackson was disqualified form police academy training for two years. The City clams that it terminated Mrs. Jackson as a result of the charge. Mrs. Jackson believes that the City and the secretary through the Chief deliberately sabotaged Mrs. Jackson and fouled up her application. The Chief was already aware of the sexual harassment that Mrs. Jackson was being subjected to and he had begun to retaliate against Mrs. Jackson.

Mrs. Jackson is the victim of a continuing hostile work environment sexual harassment and sex discrimination. The City reports that it terminated Mrs. Jackson due to her application, but Mrs. Jackson shows that the real reason she was terminated was sex discrimination and harassment.

**Defendants' Contentions**:

While Mattie Jackson was a probationary employee with the Union Springs Police Department, the Department received several complaints from fellow officers against Mattie Jackson. On September 23, 2005, several officers complained of Ms. Jackson's behavior at a high school football game, related to her improper cell phone usage and attitude. Because of the complaints, Mattie Jackson was subject to a disciplinary action report setting forth the following violations: (1) improper conduct, (2) poor attitude, and (3) discourteous to public or fellow associates. She was also warned if she continued her improper telephone usage, she would be dismissed or her probation would be continued for an additional six months. Mattie Jackson refused to sign the disciplinary and action report. Approximately one month later, Mattie Jackson was again reprimanded for improper conduct, her supervisor noting that she "has been unprofessional in my presence on several occasions. Her conduct in the presence of officers and citizens alike are unbecoming." Further, the officer recommended immediate dismissal. Mattie Jackson was placed on administrative leave with pay until the city council could meet, to discuss her continued employment with the City of Union Springs. Being a probationary employee, Mattie Jackson was subject to dismissal at any time for any reason.

After the meeting was continued to November 7, 2005, the City of Union Springs received correspondence from the Alabama Police Officers Standard and Training Commission, the state agency that trains and certifies police officers. Alabama law mandates that an individual must attend the police academy for certification within six months of their

employment as a police officer. During her probationary employment with the City of Union Springs, Mattie Jackson applied to the police academy. However, Mattie Jackson apparently falsified her application by failing to disclose a criminal trespass charge occurring on July 18, 1996.

It would have been illegal for the City of Union Springs to continue the employment of Mattie Jackson as a police officer because she was unable to attend the police academy within six months of her hire date. On November 21, 2005, it was concluded that Mattie Jackson had falsified her application to APOST and it was confirmed that APOST would not allow Mattie Jackson to enter the police academy for a period of two years. Accordingly, the city council terminated her probationary employment to keep the City of Union Springs in compliance with state law.

The City of Union Springs has in effect a policy prohibiting discrimination and sexual harassment. The policy prohibits all types of discrimination and sexual harassment. This policy also requires that the employee who believes that he or she is a victim of sexual harassment, must come forward and voice their complaint to their superiors, so that the city can investigate any sexual harassment claims. In this case, Mattie Jackson did not come forward with the allegations of sexual harassment until after she had been reprimanded and faced disciplinary measures.

Mattie Jackson implies that she was treated differently because of the sexual harassment. However, the complaints against Mattie Jackson, detailed above, explain why Mattie Jackson was reprimanded. Mattie Jackson claims that she was reprimanded and

disciplined when other officers who were doing the same things were not disciplined. The ultimate disciplinary action that Mattie Jackson received was her employment termination. Mattie Jackson implies that her employment termination came about because of her complaints of sexual harassment. However, the evidence supports that Mattie Jackson's employment with the City of Union Springs was terminated because she falsified her application to APOST. Apparently, Mattie Jackson was arrested for criminal trespass in 1996, and attempted to hide this fact from APOST. APOST discovered the falsification and alerted the City of Union Springs. Further, APOST informed the City of Union Springs that Mattie Jackson could not apply for the police academy for two years after falsifying her application. Because a police officer must apply to APOST, be accepted, and successfully attend the police academy before the end of six months, Mattie Jackson could not continue her employment with the City of Union Springs.

Plaintiff also alleges that she was treated differently because she was a female. Specifically, she states that she was not allowed to have a service weapon when other males were. At the time that Mattie Jackson was employed as a probationary officer and not allowed to have a service weapon, no male officers were in the same position. Plaintiff was not allowed to have a service weapon because she had not been certified with her weapon.

5. **STIPULATIONS BY AND BETWEEN THE PARTIES:**

Mattie Jackson was hired by the City of Union Springs as a probationary police officer in September 2005. Mattie Jackson was terminated by the Union Springs Police Department in November of 2005. She claims that she was subjected to sexual harassment and that her

employment was termination because of her complaints of sexual harassment. In her complaint, she has sued for a violation of Title VII alleging sexual harassment and sexual discrimination.

6.     The jury selection and trial of this cause, which is to last four (4) days, are set for **December 10, 2007** at **10:00 a.m.** at the United States Courthouse in Montgomery, Alabama.

7.     A trial docket will be mailed to counsel approximately **three (3) weeks** prior to a trial term. The parties shall file pretrial briefs, voir dire questions, motions in limine, fully briefed, and jointly proposed jury instructions,[1] together with citations of law thereon, on or before two (2) weeks prior to the date shown on the docket for jury selection, unless said time is shortened by the court on motion of either party.

8.     On or before three (3) weeks prior to jury selection the parties shall identify deposition parts or other documents expected to be used at trial. Within seven (7) days thereafter, the adverse party shall identify any responsive parts of depositions expected to be used at trial. Within three (3) days of the designation of such responsive parts, the adverse party shall designate any part desired as rebuttal thereto.

9.     On or before thirty (30) days prior to the trial date, the parties shall exchange witness lists, exhibits, and other tangible evidence to be used a trial.[2] Written objections shall be filed no later than fourteen (14) days prior to the trial date, otherwise the same shall be

---

[1] The parties shall work together and prepare joint jury instructions. Any instructions they cannot agree on shall be clearly marked with proposed instructions by each party.

[2] A copy of the witness lists and exhibit lists should be electronically sent to the court's proposed order box at propord_moorer@almd.uscourts.gov

deemed genuine and admissible into evidence. Objections shall set forth grounds and legal authorities.

**10.** Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk) **three (3) copies** of the exhibit list and a sufficient number of photostatically reproducible exhibits for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits.

**11.** All deadlines not otherwise affected by this order will remain as set forth in the Amended Scheduling Order (Doc. 21) entered by the Court on April 12, 2007.

**12.** All understandings, agreements, deadlines, and stipulations contained in this Pretrial Order shall be binding on all parties unless this Order be hereafter modified by order of the Court.

DONE this 27th day of August, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE